PEOPLE, PLAINTIFF AND APPELLEE, *v.* RODRÍGUEZ ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Humacao in a Prosecution for Violation of the National Prohibition Act.

No. 2148.— Decided June 17, 1924.

NATIONAL PROHIBITION ACT—JURISDICTION.—When Congress conferred upon the insular courts concurrent jurisdiction of violations of the National Prohibition Act it acted as a local legislature to which certain constitutional limitations are not applicable; therefore, such jurisdiction should be exercised in accordance with the local rules of procedure.

ID.—ID.—PLEADING.—A complaint for violation of the National Prohibition Act filed in a municipal court in the name of the United States, including also the name of The People of Porto Rico, complies with the requirements of section 10 of the Jones Act.

The facts are stated in the opinion.

*Mr. L. Pereyó Quiñones* for the appellants.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

This case originated in the Municipal Court of Humacao. The defendant was charged with and convicted of a violation of the National Prohibition Act and after an appeal to the district court, in which he was also convicted, he took this second appeal to the Supreme Court.

The error of real importance assigned by the appellant is the lack of jurisdiction of the inferior courts because the criminal action was brought in the name and by the authority of The People of Porto Rico instead of in the name and by the authority of the United States, as the violation charged was of a national law. In other words, the appellant's proposition amounts to a contention that as the violation was not an offense against the peace and dignity of The People of Porto Rico, but against the authority of the United States, the inferior courts had no jurisdiction to issue process in the name of The People of Porto Rico.

The complaint begins as follows:

"Municipal Court of Humacao, P. R. United States of America, The President of the United States, SS. The People of Porto Rico vs. Ramón Rodríguez, José Capele, Santos Rodríguez, Isidoro Cardona, Narciso Rodríguez.—I, Rafael Alarcón, Corporal, I. P., of age and residing on Principal Street, Las Piedras, P. R., complain against the said defendants for a violation of the National Prohibition Act, committed as follows: * * * "

The United States District Court for Porto Rico had exclusive jurisdiction of violations of the National Prohibition Act until on September 21, 1922, the Congress enacted a law conferring concurrent jurisdiction of such violations upon the insular courts. The said Act reads as follows:

"AN ACT to confer upon the territorial courts of Porto Rico concurrent jurisdiction with the United States Courts of that district of all offenses under the National Prohibition Act and all Acts amendatory thereof or supplemental thereto.

"*Be it enacted by the Senate and House of Representatives of*

*the United States of America in Congress assembled,* That there be, and is hereby, conferred upon the Territorial magistrates and courts of Porto Rico jurisdiction concurrent with the commissioners and courts of the United States for the said Territory of all offenses under the Act of October 28, 1919, known as the National Prohibition Act, and all acts amendatory thereof and supplemental thereto, the jurisdiction of said Territorial magistrates and courts over said offenses to be the same which they now have over other criminal offenses within their jurisdiction.''

In order to understand the real scope of this Act and the authority of Congress to enact it, we consider it necessary to say that in relation to the territories the Congress of the United States occupies a dual position—one as the Congress of the United States limited in its powers by the Constitution, and the other as a local legislature to which many of the constitutional limitations do not apply.   26 R. C.L. 669.

It was in the latter capacity that Congress legislated for Porto Rico so as to extend to the insular courts jurisdiction of violations of the National Prohibition Act, and not as the Congress of the Nation limited in its powers by the Constitution.   This being premised, in enforcing its provisions by punishing their violation the insular courts act only by delegation of Congress, which not being restrained by the judicial clause of the Constitution because it is not applicable to the territories, could and did extend the said jurisdiction to these courts without attaching to it the procedure prevailing in the United States District Court for Porto Rico, but rather with the intention that the insular courts should act under the same procedure as in other cases of local offenses under their exclusive jurisdiction.

''The distinction between the federal and state jurisdictions, under the constitution of the United States, has no foundation in territorial governments; and consequently, no such distinction exists either in respect to the jurisdiction of their courts or the subjects submitted to their cognizance. There is but one system of government or of laws operating within their limits, as neither is

subject to the constitutional provisions in respect to state and federal jurisdiction. And the judicial clause of the constitution has no application to courts created in the territories, and with respect to them Congress has a power wholly unrestricted by it. It must be assumed as a logical inference that the other powers vested in Congress by the constitution have no application to these territories, or that the judicial clause is exceptional in that particular.'' 26 R. C.L. 674, and notes citing *Benner* v. *Porter,* 9 How. 235, 13 U. S. (L. ed.) 119; *Downes* v. *Bidwell,* 182 U. S. 244.

If there were doubt about the power of Congress to confer the jurisdiction upon the insular courts and discard the forms of procedure prevailing in the United States courts and this should raise doubts as to the constitutionality of the Act, it would be a question of revising the so-called *Insular Cases* and establishing principles and theories contrary to them.

''While Congress may make laws for the government of territories, without being subject to all the restrictions which are imposed upon that body when passing laws for the United States, considered as a political body of states in union, the exercise of the power expressly granted to govern the territories is not without limitations. Doubtless Congress, in legislating for the territories, would be subject to those fundamental limitations in favor of personal rights which are formulated in the constitution and its amendments, but those limitations would exist rather by inference and the general spirit of the constitution, from which Congress derives all its powers, than by any express and direct application of its provisions.'' 26 R.C.L. 672, citing *Dorr* v. *United States,* 195 U. S. 138, 24 S. Ct. 808, 49 U. S. (L. ed.) 128, 1 Ann. Cas. 697; *Church of Jesus Christ, etc.,* v. *United States,* 136 U. S. 1, 10 S. Ct. 792, 34 U. S. (L. ed.) 478; *Downes* v. *Bidwell,* 182 U. S. 244, 21 S. Ct. 770, 45 U. S. (L. ed.) 1088; *Hawaii* v. *Mankichi,* 190 U. S. 197, 23 S. Ct. 787, 47 U. S. (L. ed.) 1016.

''While ceded territory ceases to be foreign in character, and for all purposes becomes domestic, that is territory over which the sovereignty of the United States extends, it is appurtenant domestic territory and not an integral part of the United States, so that Congress in the administration of it is uncontrolled by many of the provisions of the constitution. Accordingly the rule is that as to territory which has not been made an integral part of the United States, the constitution does not, without legislation and of its own

force, carry the guaranties of the sixth amendment securing a trial by jury. The right to a jury trial and the presentment by a grand jury are not among those fundamental rights which Congress in legislating for a territory, not incorporated into the United States, must secure to the inhabitants. From this it must necessarily follow that until Congress does act by extending the right to jury trial to newly acquired territory, the prevailing system of judicial procedure is applicable and controlling. Until Congress shall see fit to incorporate territory ceded by treaty into the United States, the territory is to be governed under the power existing in Congress contained in article 4, section 3 of the constitution to make laws for such territories, and subject to · such constitutional restrictions upon the powers of that body as are applicable to the situation.'' 26 R.C.L. 675, citing *Downes* v. *Bidwell,* 182 U. S. 244, 21 S. Ct. 770, 45 U. S. (L. ed.) 1088; *Fourteen Diamond Rings* v. *U. S.,* 183 U. S. 176, 22 S. Ct. 59, 46 U. S. (L. ed.) 138; *Hawaii* v. *Mankichi,* 190 U. S. 197, 23 S. Ct. 787, 47 U. S. (L. ed.) 1016; *Dorr* v. *United States,* 195 U. S. 138, 24 S. Ct. 808, 49 U. S. (L. ed.) 128, 1 Ann. Cas. 697; *Rassmussen* v. *United States,* 197 U. S. 516, 25 S. Ct. 514, 49 U. S. (L. ed.) 862.

. Most of the cases included in the notes are cited in *Balzac* v. *Porto Rico,* 258 U. S. 298, the case most recently decided by the Supreme Court of the United States in connection with the constitutional status of Porto Rico, and referring to which this Supreme Court, in *Morales* v. *Board of Registration, ante,* p. 76, said:

''If the amendment is applicable the case must be decided in favor of the petitioners. There is no doubt about that. The question is thus reduced to whether the constitutional amendment is in force in Porto Rico, and this presents one of the most serious problems with which the Supreme Court of the United States was confronted after the Spanish-American War and which for more than twenty years has time and again engaged the attention of the justices of that Court until it appears to have been definitely settled in the case of *Balzac* v. *People of Porto Rico,* 258 U. S. 298.''

In that opinion of this court reference was also made to the important comments on the *Insular Cases* made by Charles Warren in volume 3, page 429, of his work entitled *The Supreme Court in United States History,* and there-

after, in connection with Warren's comments and the *Balzac Case, supra,* this court expressed itself as follows:

"When the work just cited was published the *Balzac Case, supra,* had not been decided. In the *Tapia* and *Muratti Cases,* 245 U. S. 639, the Supreme Court handed down no opinion, thus disappointing the expectations of those who firmly believed and fully expressed their opinions (*Muratti* v. *Foote,* 25 P.R.R. 527) that when American citizenship was bestowed upon the Portoricans collectively all of the requirements of the jurisprudence of the Supreme Court had been complied with and Porto Rico should be considered as a territory definitely incorporated into the Union. It seems that the Court took notice of this and when William Howard Taft, former President of the United States, former Secretary of War and former Governor of the Filippines, was appointed Chief Justice of the Court, at the first opportunity he delivered an opinion laying down the view of the Court in unequivocal terms, as follows:   *   *   *  "

It is unnecessary to repeat now all that the Supreme Court of the United States has declared in regard to the actual political status of Porto Rico in its constitutional aspect under the Jones Act, but it is important, however, to cite from the *Balzac Case, supra,* as directly pertinent to the question involved in this case the two following paragraphs:

"In Porto Rico, however, the Porto Rican can not insist upon the right of trial by jury, except as his own representatives in his legislature shall confer it on him. The citizen of the United States living in Porto Rico can not there enjoy a right of trial by jury under the Federal Constitution, any more than the Porto Rican. It is locality that is determinative of the application of the Constitution, in such matters as judicial procedure, and not the status of the people who live in it.

*      *      *      *      *      *      *

"The United States District Court is not a true United States court established under Article III of the Constitution to administer the judicial power of the United States therein conveyed. It is created by virtue of the sovereign congressional faculty, granted under Article IV, sec. 3, of that instrument, of making all needful rules and regulations respecting the territory belonging to the United States. The resemblance of its jurisdiction to that of true

United States courts in offering an opportunity to nonresidents of resorting to a tribunal not subject to local influence, does not change its character as a mere territorial court."

It being assumed that the Act is constitutional, the mere fact that Congress extended the jurisdiction to the insular courts, declaring expressly "the jurisdiction of said Territorial magistrates and courts over said offenses to be the same which they now have over other criminal offenses within their jurisdiction," indicates clearly the intention of Congress to be that inasmuch as the Jones Act had provided for the organization and procedure of the insular courts by giving this power therefor to the Legislature of Porto Rico, offenses against the prohibition laws should be prosecuted according to the insular system of procedure established by our local laws. To suppose a contrary intention to the effect that the procedure should be the same as that of the United States District Court for Porto Rico, and as a corollary that the United States district attorneys should institute and prosecute the cases in the insular courts, would lead us undoubtedly to very absurd results. Such a construction would defeat the very purpose of the law. It seems that the primary intention of Congress was to lighten the work of the United States Court and make more expeditious the trial of prohibition cases. Most of the cases are disposed of by the municipal courts throughout the Island and the application of the federal procedure would bring about for the first time and without a local law authorizing them, trials by jury in the municipal courts, and the proceedings before any court would perhaps have to be carried on in the English language in order to be consistent and give the law all of its constitutional effect.

But such was not the intention of Congress and there is nothing to show its purpose to carry into the insular courts a greater evil than that which it sought to remedy by taking a part of its jurisdiction from the United States District

Court for Porto Rico in prohibition cases and extending it to the insular courts for the application of a federal law.

Because of the sole fact that violations of the National Prohibition Act are offenses against the authority of the United States it is not inconsistent to say that the Act of Congress conferring concurrent jurisdiction upon the insular courts in such cases can be considered as a local law with regard to the manner of its enforcement as if it had been enacted by the Legislature of Porto Rico, which after all is nothing more than an agency of the Congress of the United States. In either sense, or considering the matter in this double aspect, it follows that the complaint bringing the criminal action in the name of the United States and including also The People of Porto Rico complies with the provisions of section 10 of the Jones Act, which reads as follows:

"Section 10.—That all judicial process shall run in the name of 'United States of America, *ss*, the President of the United States,' and all penal or criminal prosecutions in the local courts shall be conducted in the name and by the authority of 'The People of Porto Rico'; and all officials shall be citizens of the United States, and, before entering upon the duties of their respect've offices, shall take an oath to support the Constitution of the United States and the laws of Porto Rico."

The reason for this provision of our Organic Act is that even local offenses are crimes against the peace and dignity of the United States, for, strictly speaking, in a territory of the United States there is no other sovereignty than that of the United States. *Snow* v. *United States*, 18 Wall. 317. This conclusion does not vitalize the objection that if the Act of Congress be considered a local law a person necessarily can be convicted twice of the same offense, that is, by the insular courts and by the United States District Court for Porto Rico. The jurisdiction of the latter ceased to be exclusive by virtue of the Act of September 21, 1922, *supra*. Both jurisdictions proceed from

the same source of authority, the Congress, and being con-
current, if a conflict of jurisdiction should arise between
the different courts, it could be adjusted by applying the
general rule that the court which first acquires jurisdiction
may retain it for the decision of-the case.

"The general rule that the authority of the court first acquiring
jurisdiction, the parties being the same, must prevail, applies in the
case of federal and state courts of concurrent jurisdiction, so that
whichever court first obtains jurisdiction may retain it for the pur-
pose of deciding every question in the cause.  So the federal judi-
ciary has no control over questions, when once the state courts have
acquired jurisdiction, until the state has finally exhausted its judi-
cial power over them by a final decision in its highest tribunal."
27 R.C.L. 39.

But even after a final decision by the insular courts the
United States District Court for Porto Rico could not take
jurisdiction of the same case and for the same offense, be-
cause its jurisdiction ceased to be exclusive when Congress
expressly extended it to the said insular courts by the Act
of September 21, 1922, *supra.*

By reason of the foregoing the judgment of the lower
court should be

*Affirmed.*

Chief Justice Del Toro and Justice Aldrey concurred.
Justices Wolf and Hutchison dissented.

### DISSENTING OPINION BY MR. JUSTICE WOLF.

Ramón Rodríguez and Isidoro Cardona were charged
with having violated the National Prohibition Law (*sic*).
The complaint was presented in the Municipal Court of Hu-
macao against them and they were declared guilty.  On ap-
peal a similar trial and conviction took place in the District
Court of Humacao.  The caption or beginning of the com-
plaint in this case reads as follows:

"Municipal Court of Humacao, P. R.   United States of America,
The President of the United States, SS.   The People of Porto Rico

vs. Ramón Rodríguez, José Capela, Santos Rodríguez, Isidoro Cardona, Narciso Rodríguez.—I, Rafael Alarcón, Insular Policeman, resident of Las Piedras, P. R., Principal Street, adult, make complaint against the defendants above mentioned for the crime of an infraction of the National Prohibition Law, committed in the following way. . .''

The rest of the complaint is a description of the particular offense committed. The defendants presented a general demurrer to the complaint which was overruled. The alleged lack of jurisdiction of the District Court of Humacao was not raised in that court. Nevertheless, jurisdictional matters may be raised generally on appeal and perhaps be deemed to be included within the scope of the general demurrer. The question presented is whether the courts of Porto Rico, acting under their local authority or as territorial courts, have jurisdiction to convict for an offense under the National Prohibition Act. It is to be noted that the complaint in this case purports to be a prosecution by virtue of the sovereignty of The People of Porto Rico and not directly by virtue of the United· States of America. The crime charged in the complaint is not one cognizable under the Penal Code of Porto Rico or under any statute passed by the Legislature thereof. The offense of manufacturing liquor, with which the defendants were charged, is not distinctly cognizable by the penal laws passed by the Legislature of Porto Rico. In other words, if there was no territorial jurisdiction, there was no offense charged against The People of Porto Rico.

The Eighteenth Amendment to the Constitution of the United States provides as follows:

''1. After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territory subject to the jurisdiction thereof for beverage purposes is hereby prohibited.

''2. The Congress and the several States shall have concurrent power to enforce this article by appropriate legislation.

"3. This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by the legislatures of the several States, as provided in the Constitution, within seven years from the date of the submission thereof to the States by the Congress."

The National Prohibition Act was approved on the 28th of October, 1919, and on the 23rd of November, 1921, the Congress of the United States passed an Act supplemental to the National Prohibition Act, which in its section 3 provides as follows:

"Section 3.—That this Act and the National Prohibition Act shall apply not only to the United States but to all territory subject to its jurisdiction, including the Territory of Hawaii and the Virgin Islands; and jurisdiction is conferred on the courts of the Territory of Hawaii and the Virgin Islands to enforce this Act and the National Prohibition Act in such Territory and Islands."

On September 21, 1922, the Congress of the United States passed the following Act:

## "AN ACT

"TO CONFER UPON THE TERRITORIAL COURTS OF PORTO RICO CONCURRENT JURISDICTION WITH THE UNITED STATES COURTS OF THAT DISTRICT OF ALL OFFENSES UNDER THE NATIONAL PROHIBITION ACT AND ALL ACTS AMENDATORY THEREOF OR SUPPLEMENTAL THERETO.

"*Be it Enacted by the Senate and House of Representatives of the United States of America in Congress Assembled,* That there be, and is hereby, conferred upon the Territorial magistrates and courts of Porto Rico jurisdiction concurrent with the commissioners and courts of the United States for the said Territory of all offenses under the Act of October 28, 1919, known as the National Prohibition Act, and all Acts amendatory thereof and supplemental thereto, the jurisdiction of said Territorial magistrates and courts over said offenses to be the same which they now have over other criminal offenses within their jurisdiction."

Under section 3 of the Act of 1921, *supra,* it is evident that the National Prohibition Law was extended to Porto Rico as a Federal Act, and the Act of 1922 does not in terms purport to make the National Prohibition Law a local act,

as has been maintained, but merely to give the local courts jurisdiction over the offenses enumerated in the National Prohibition Act. Nevertheless, it has been strongly contended that the intention of Congress by the Act of 1922 was to make the National Prohibition Act a local law. As we have seen, the said Act does not speak of the National Prohibition Law, but only of the offenses thereunder. The National Prohibition Act confers upon the courts certain other civil and equitable jurisdiction which in no sense has been conferred upon the local courts of Porto Rico.

Of the power of Congress distinctly to make the National Act a local law, of course I have no question. The question is whether Congress did so, or intended to do so. If my recollection serves me correctly, Congress at one time made the Penal Code of the state of Kansas, or some other state, a Penal Code for the Indian Territory, and of course Congress had this power and indicated it in unmistakable language. In the Act of September 21, 1922, *supra,* there is no expression of intention to make a local law of the National Prohibition Act. That the whole law was not intended to be a local act is a thought excluded by the fact that only the crimes mentioned in the National Prohibition Act should fall under the jurisdiction of the local courts.

The intention of Congress under the Act of 1922 seems sufficiently plain from a mere reading thereof. The magistrates and courts of Porto Rico are given jurisdiction concurrent with the commissioners and courts of the United States for the said territory, etc. The jurisdiction concurrent must mean the same jurisdiction that the United States District Court for Porto Rico has, which, up to the passage of the law of 1922, was the only court in Porto Rico having jurisdiction over offenses against the National Prohibition Act. Some stress has been made of the end of the Act where the following words appear: "the jurisdiction of said territorial magistrates and courts over said offenses to be the same which they now have over other criminal

offenses within their jurisdiction.'' This last clause is a mere general enabling one which gives the local courts jurisdiction over the same persons and the same class of crimes, *e. g.,* felonies and misdemeanors, as are now already under their respective jurisdictions. The words ''within their jurisdiction'' mean that Congress is not extending the authority of the local courts to any grade of cases or persons over which they did not already have jurisdiction.

The history of the legislation of Congress and the historical precedents in regard thereto show that it has been the steady practice of Congress to give territorial courts jurisdiction to try prosecutions for violation of United States statutes. Sections 1907 to 1910 of the Revised Statutes show how jurisdiction was conferred.

In *Ex Parte Crow Dog,* 109 U.S. 556–560, the Supreme Court of the United States said:

''The district court (territorial) has two distinct jurisdictions. As a territorial court it administers the local law of the territorial government; as invested by Act of Congress with jurisdiction to administer the laws of the United States, it has all the authority of circuit courts.''

Similar decisions were made in *Pickett* v. *United States,* 216 U.S. 456–459, 54 L. Ed. 566–568; *Brown* v. *United States,* 146 Fed. 975; *United States* v. *Averill,* 4 Utah, 416, 7 Pac. 527; and *United States* v. *Pridgeon,* 153 U.S. 58.

And, quoting from *Ex Parte Crow Dog,* the Supreme Court of the United States in *Gon-Shay-ee,* 130 U.S. 343–348 *et seq.,* confirmed the idea of the duality of the jurisdiction of the territorial court. From the history of the United States in the foregoing decisions it is evident that Congress was perfectly familiar with the duality of jurisdiction in the territorial courts. It is true that in Porto Rico the local territorial courts had exclusively a local jurisdiction up to the passage of the Act of 1922 and that the United States District Court for Porto Rico had cognizance of all the offenses against the United States. That Act, however, gave

the local courts jurisdiction by virtue of the National Prohibition Act and bound them to take notice of offenses under said National Prohibition Act. The whole substantive draft of power that the local courts have is by virtue of the National Prohibition Act.

While I do not question the power of Congress to make the National Prohibition Act a local law, I seriously question the power of Congress to extend the National Prohibition Act to Porto Rico and not extend all its substantive and adjective provisions. As I have already pointed out, it was not the Act of 1922 which first extended the National Prohibition Act to Porto Rico; it was the Act of 1921. Hence, the Act being already in force in Porto Rico as the National Prohibition Act, the courts that were given the jurisdiction to enforce offenses against the said National Prohibition Act must be, so to speak, ancillary United States or Federal courts in the same sense that the territorial courts of the United States have from time immemorial had a federal jurisdiction for the prosecution of crimes against the United States which were not crimes against the territory.

A good deal of the argument advocating the theory that the Act of 1922 is a local law proceeds from the inconveniences that would result and especially that the practice and procedure in the courts of Porto Rico are very distinct from the practice and procedure followed in the United States District Court for Porto Rico. This difficulty, it seems to me, is immediately solved by pointing out that the procedure in the courts of Porto Rico when they are exercising federal jurisdiction may be made consistent and congruent with the practices already in force in the United States District Court for Porto Rico, even down to the summoning of a jury with the same qualifications as the jurors of that court. If the courts of Porto Rico are enforcing a federal statute, they have the same powers as the courts of the United States, in conformity with the very words of the

Act of 1922. All necessary means were necessarily conferred to carry the jurisdiction into effect. I am paraphrasing the words of Chief Justice Marshall said in several instances in regard to the power of the United States.

It was urged that the result of attempting to give the local courts federal jurisdiction would not be due process of law by reason of the supposed inconveniences. This has not been demonstrated. However, if the intention of Congress as indicated by the words of the Act and the historical and legal precedents is to confer such jurisdiction, the peril that the Act of 1922 may be inoperative is no reason to give it a construction not at all within the intention of the legislature. If inconveniences lead to unconstitutional results, we see enormous difficulties in the attempt to construe the Act as a local law.

It is possibly true that it was the intention of Congress to relieve the United States District Court for Porto Rico of an excess of work under the National Prohibition Act. It does not appear from that Act that the idea was to relieve the United States District Attorney and his assistants ·from prosecuting in the courts of Porto Rico. On the face of the Act itself there is nothing to show that Congress in 1922 was conferring a different class of jurisdiction on territorial courts than it conferred by sections 1907–10 of the Revised Statutes of the United States.

The National Prohibition Law is a Federal statute made to apply equally throughout the whole United States and to all the territories subject to its jurisdiction. It must necessarily be equally applied. A person charged with a crime under the National Prohibition Act must have the same chances to defend as he would have in any other part of the United States. He must have the same opportunities for a jury trial. If the procedure in the two courts is distinct as now practiced, the jurisdiction of the local courts must be made harmonious with the jurisdiction of the United States courts. Otherwise inequalities are bound to arise.

The National Prohibition Act cannot be a local law and a federal law at the same time dependent upon which court takes jurisdiction.

Therefore, I think that the judgment should be reversed and the prisoner discharged.